486 So.2d 255 (1986)
NEWMAC/BUD LIGHT TEAM BASS CIRCUIT, INC., Plaintiff-Appellee,
v.
Gregory L. SWINT and Mark Miller, Defendants-Appellants, and
Jack Adams and Bubba McGown, Defendants-Appellees.
No. 85-110.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1986.
*256 Onebane & Associates, Mark L. Riley, Lafayette, for defendants-appellants.
Robert W. Thomas, of Thomas & Hardy, Lake Charles, Henry H. Lemoine, Pineville, for plaintiff-appellee.
Before GUIDRY and FORET, JJ., and HOOD, J. Pro Tem.
WARREN E. HOOD, Judge Pro Tem.
This case arises out of a dispute over who the winning team should have been in the Newmac/Bud Light Team Bass Circuits, Inc., Mystery Lake Tournament. The contest was undisputably won, in terms of poundage, by the team of Gregory L. Swint and Mark Miller, who brought in a total of over forty (40) pounds of bass. The second place team, consisting of Jack Adams and Bubba McGown, brought in approximately nineteen (19) pounds of bass.
After the contest was over, Jack Adams and Bubba McGown complained to the tournament director, Les Golmon, that they felt that Swint and Miller should be disqualified because they thought that Swint and Miller were professional fishermen. It was their contention that the contest rules prohibited professional fishermen from participating in the contest.
At that time Golmon indicated to Adams and McGown that only "professional guides" were prohibited by the rules and not professional fishermen. Upon subsequent investigation, Golmon found out that Swint and Miller had actually served as guides for pay on Toldeo Bend at various times during 1984, the year of the tournament. After making this finding, Golmon determined that Swint and Miller were, in fact, "professional guides", and on that basis he disqualified them from the contest. Once Swint and Miller were disqualified, the second place winners, Adams and McGown, were then declared to be the winners *257 of the tournament grand prize, consisting of a fully rigged Skeeter Starfire bass boat with motor and accessories.
After this series of events, Swint and Miller made demand upon Newmac/Bud Light Team Bass Circuits, Inc. for the grand prize. Newmac/Bud Light then filed a rule to show cause why the defendants, Swint and Miller, should not be disqualified and the defendants, Adams and McGown, declared the grand prize winners. The trial court rendered judgment in favor of the plaintiff, Newmac/Bud Light, upholding the tournament director's decision disqualifying defendants-appellants, Swint & Miller, and declaring defendants-appellees, Adams and McGown, the winners.
It further rendered judgment: recognizing the decision of the tournament director, Les Golmon, as the final authority in determining the disposition of the prizes involved in the tournament, including, but not limited to, the bass boat, trailer and accessories; ordering Gregory L. Swint to return the $740.00 won as the big bass award in the Mystery Lake Tournament on September 16, 1984; and ordering the plaintiff to return to Gregory L. Swint and Mark Miller their application fees for entering the tournament.

ASSIGNMENTS OF ERROR
Appellants, Swint and Miller, now assert the following assignments of error:
1) The court erred in holding that the tournament director's decision was binding unless shown to be arbitrary and capricious.
2) The court erred in not finding that the tournament director's decisionthat the rules prohibited professional guides from competingwas arbitrary and capricious.
3) The court erred in finding that the tournament director's decision that Swint and Miller were professional guides was not arbitrary and capricious.

ASSIGNMENT OF ERROR NO. 1
Appellants' first assignment of error is based on the theory that by entering the contest they entered into a contract with Newmac/Bud Light and that the contract contained a potestative condition. The pertinent contest rule states:
"TOURNAMENT RULES: The following rules have been established for the best interest of all concerned. In the event of necessity any rule may be altered at the discretion of the tournament director. In any event all interpretation of rules and final decisions will rest with the tournament director."
It is appellants' contention that this provision gives the tournament director unbridled discretion to make any decision he chooses using only his personal whim or caprice as a guide. They argue that Golmon is not a neutral third party but is directly associated with the sponsor as its director, and that since he can arbitrarily relieve the sponsor of its obligation to a contestant, the contract is potestative.
Appellants rely on the case of Jones v. Fowler, 185 So. 40 (Orl.App.1938).
In that case, Fowler, the operator of a shooting gallery, offered a prize of $300.00 to any person, after payment of a fee, who could shoot out and obliterate a red "5" on a target with only three shots from a .22 caliber rifle. Jones, the plaintiff therein, was successful in obliterating the red "5", at least insofar as the naked eye could see. However, with a magnifying glass, a small amount of red ink could be discerned. The court held that the reservation by Fowler, a contracting party, of the right to be the sole judge of the contest was void as a potestative condition. It observed that while Civil Code Article 1799 grants to the contracting parties the right to appoint an arbiter to settle any disputes, the party chosen to act as such must not be either the obligor or the obligee.
Thus, the court made its own determination of the rules without reference to Fowler's prior decision. The court determined that the intent of the rules was that a contestant who could obliterate the red "5" to the naked eye would win the prize, and *258 in this particular case, Jones was entitled to the $300.00.
Appellants contend that the decision in Jones mandates a similar result in the case at bar. They argue that the trial judge should have decided this case without deference to the tournament director's decision, rather than upholding that decision on a finding that it was not an arbitrary or capricious decision.
Jones is readily distinguishable from the present case. In Jones, the operator of the shooting gallery stood to gain by his decision. In the present case, the sponsor, Newmac/Bud Light, did not stand to gain by whatever decision Golmon made. All prizes were to be awarded, regardless of who the winners might be. And, of course, Golmon did not stand to profit by his decision. He has no association with the sponsor other than having agreed to act as the tournament director for the Bass Circuit tournaments. He is the national sales manager at KALB television. He has an outdoor show on television, and is involved in tournament fishing of all types. These are, in part, the reasons he was requested to act as tournament director. Contrary to the situation in Jones, the arbiter in the present case had no personal interest in the dispute, and he was not a contracting party.
Jones is further distinguishable in that under the contest rules in that case, the operator of the gallery was given the authority to make an arbitrary decision. In the present case, Golmon did not have the power to simply refuse to award the contest prizes or award them to whomever he should wish, on his mere whim, or in accordance with his own desires. He had a duty to exercise his sound judgment in interpreting the rules, and in the absence of necessity of doing otherwise, he was under a duty to award the prizes to those catching the most poundage of fish. He was required to make a sincere effort to require fulfillment of the obligations imposed by the contest rules. He was necessarily called upon to exercise his discretion and to interpret the rules.
In considering the law on potestative conditions, it should be noted that the event that gave rise to this cause of action occurred prior to the revision of the obligation articles, which became effective January 1, 1985. Therefore, the former articles, La.Civ.Code Articles 2024, 2034 and 2035 (1870), will be decisive of this case. La.Civ.Code Article 1770 replaces the aforementioned articles, but it does not change the law. It merely clarifies it.
Former Civil Code Article 2024 read:
"The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder."
Former Civil Code Article 2034 stated the following:
"Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself."
Former Civil Code Article 2035 stated the following:
"The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if a condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void."
The foregoing articles were analyzed in the case of Franks v. Louisiana Health Services & Indemnity Co., 382 So.2d 1064 (La.App.2d Cir.1980), and the court had the following to say:
"The jurisprudence established that only those potestative conditions which are dependent on the will, whim, or caprice of the obligor invalidate the contract ... If the condition shows on its face that the obligor may or may not fulfill his obligation as per his desire, then the obligation is null. However, if the condition imposes on the obligor the duty of making a sincere effort to fulfill the obligation, then the fact that the obligor is in *259 a position to hinder or prevent the execution of the contract does not make the contract null." (citations omitted)
Under the law as cited above, and the facts of this case, the trial judge was correct in finding that the rule in question is not potestative. Accordingly, he was correct in holding that the tournament director's decision was binding unless shown to be arbitrary and capricious. We might add that even if appellants were correct in their contention that the court should have made a finding without deference to the tournament director's decision, we would have little difficulty in agreeing with that decision. This will be readily seen in the following discussion of the second and third assignments of error.
Appellants' first assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Appellants' second assignment of error is that the trial court erred in not finding that the tournament director's decision that the contest rules prohibited professional guides from competing was arbitrary and capricious. They contend there is no written rule prohibiting the use of professional guides from fishing in the tournament or prohibiting the use of professional guides by other contestants in the tournament. They complain that the director's decision was based on an unwritten rule.
The contest provision in question states the following:
"PRE-TOURNAMENT: Anglers may fish the tournament waters with anyone except a professional guide. Tournament lakes off limit Monday through Friday. Each contestant agrees to report to tournament officials any violations of these rules. The failure to report violations or suggestions to violate these rules, or false weight-in forms will be cause for disqualification."
It is appellants' contention that this provision applies only to pre-tournament and that this is merely a prohibition against a contestant fishing with a professional guide during pre-tournament.
Although the prohibition against the use of professional guides appears under the heading of "Pre-tournament", it is reasonable to conclude that this prohibition extends to the entire tournament. To interpret this provision as the appellants contend would lead to an absurd result, because a contestant would be prohibited from fishing with a professional guide during pre-tournament, but the contestant would not be prohibited from fishing with a professional guide during the tournament. Their interpretation would further mean that a professional guide could not only be a contestant, but that he could also fish the tournament waters pre-tournament, provided he did not fish pre-tournament with another professional guide.
This would be an absurd interpretation of the contract which our law does not permit. This provision is poorly drawn. However, it was the clear intention of the rule that the use of professional guides in connection with the tournament was prohibited. It necessarily follows that they could not be contestants themselves. The tournament director was not arbitrary and capricious in reaching this conclusion.

ASSIGNMENT OF ERROR NO. 3
Appellants' third assignment of error is that the court erred in finding that the tournament director's decision that Swint and Miller were professional guides was not arbitrary and capricious.
In addressing this issue, the first question that needs to be answered is: "What exactly is a professional guide?" The tournament rules do not provide definition. Therefore, we must construe this term in its ordinary sense and give it its common and usual signification without attending so much to grammatical rules, as to general and popular use. La.Civ.Code Article 1946 (1870). It should be noted that this article has been replaced by La.Civ.Code Article 2047 in accordance with the revision of the articles dealing with obligations which became effective January 1, 1985. *260 Article 2047 does not represent a change in the law, merely a renumbering.
Webster's New Collegiate Dictionary, p. 911, G & C Meriam Co., U.S.A., 1980, defines "professional" as follows:
"Professional2a: participating for gain or livelihood in an activity or field of endeavor often engaged in by amateurs."
Using this definition of a professional as a starting point, we, as did the trial judge, can define a "professional guide" as one who participates as a guide for pay.
The record indicates that both Swint and Miller had acted as guides for pay on Toledo Bend at least five times each between March and May of 1984. The Mystery Lake Tournament, which was held at Toledo Bend on September 16, 1984, was the culmination of four qualifying tournaments held between February and September of 1984. Both Swint and Miller testified that they had each served as a guide for pay at Toledo Bend a total of five times between March and May of 1984.
Although neither had acted as a guide for pay at any location other than Toledo Bend, it is important to note that the Mystery Lake Tournament and two of the qualifying tournaments were held at Toledo Bend. It is also important to note the time element involved herein. The first qualifying tournament was held at Cane River on February 12, 1984. The second qualifying tournament was held at Toledo Bend on March 25, 1984. The third qualifying tournament was held at Cleco Lake on April 15, 1984, and the last qualifying tournament was held at Toledo Bend on May 27, 1984. The Mystery Lake Tournament was then held at Toledo Bend on September 16, 1984, with the top seventy-five teams who qualified during the four qualifying tournaments eligible to enter.
The two qualifying tournaments held at Toledo Bend were held during the period in which both Swint and Miller were acting as guides for pay at Toledo Bend. The Mystery Lake Tournament was then held at Toledo Bend approximately four months after the last time Swint and Miller had acted as guides for pay at Toledo Bend. The close proximity in time of the Mystery Lake Tournament to the times that Swint and Miller guided for pay at Toledo Bend renders the decision made by the tournament director disqualifying them, reasonable. This is not to say that had these two individuals last acted as professional guides at an earlier point in time, say, one year before, or at some other location, that the tournament director's decision would have been reasonable. However, because appellants acted as professional guides on Toledo Bend within the tournament qualifying period, it is clear that the trial court did not err in finding the tournament director's decision, that they were professional guides, was not arbitrary and capricious.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellants.
AFFIRMED.